UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE CURTIS MATHEWS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:14-cv-1947-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is granted, the Commissioner is denied, and the matter is remanded for further proceedings.

I.   BACKGROUND

Plaintiff filed an application for SSI, alleging that he had been disabled since January 1, 2004. Administrative Record ("AR") 153-161. His application was denied initially and upon reconsideration. *Id.* at 88-92, 94-98. On September 10, 2012, a hearing was held before administrative law judge ("ALJ") Peter Belli. *Id.* at 42-69. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. *Id.*

1

On October 19, 2012, the ALJ issued his decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the act.[1] *Id.* at 20-35. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since December 30, 2010, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: Psychotic disorder, nos, borderline intellectual functioning and substance abuse. (20 CFR 416.920(c)).

\* \* \*

3. The claimant impairments, including the substance use disorder, meet section 12.02, 12.03, 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d)).

\* \* \*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

4. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

\* \* \*

5. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

\* \* \*

6. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: receive, remember and understand simple instructions, occasionally receive and carry out detailed instructions. Unable to perform complex jobs and he is limited to frequent exposure and interaction with the general public. He is able to make simple workplace judgments and adjustments to normal workplace. Able to frequently interact with supervisors and coworkers.

\* \* \*

7. The claimant has no past relevant work (20 CFR 416.965).

8. The claimant was born on March 23, 1966 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

10. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

11. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 416.960(c) and 416.996)

\* \* \*

12. The claimant has not been under a disability, as defined in the Social Security Act, since November 9, 2010, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 22-35.

Plaintiff's request for Appeals Council review of the ALJ's decision was denied on April 7, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 6-12.

1  II.     LEGAL STANDARDS

2        The Commissioner's decision that a claimant is not disabled will be upheld if the findings
3  of fact are supported by substantial evidence in the record and the proper legal standards were
4  applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);
5  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,
6  180 F.3d 1094, 1097 (9th Cir. 1999).

7        The findings of the Commissioner as to any fact, if supported by substantial evidence, are
8  conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is
9  more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th
10 Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a
11 conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.
12 N.L.R.B.*, 305 U.S. 197, 229 (1938)).

13       "The ALJ is responsible for determining credibility, resolving conflicts in medical
14 testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
15 2001) (citations omitted). "Where the evidence is susceptible to more than one rational
16 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
17 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

18 III.    ANALYSIS

19       Plaintiff argues that the ALJ erred by failing to consider whether his impairments satisfied
20 Listing 12.05(C). ECF No. 16 at 4-10.

21       At step three of the sequential evaluation process, the ALJ determines whether a
22 claimant's impairment or combination of impairments meet or equals one of the impairments
23 listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Where a claimant's impairment or
24 impairments meets or equals a listed impairment in Appendix 1, the claimant is per se disabled.
25 20 C.F.R. § 416.920(d). "Once a per se disability is established, the ALJ has no discretion; he
26 must award benefits." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990).

27       Listing 12.05—intellectual disability—"refers to significantly subaverage general
28 intellectual functioning with deficits in adaptive functioning initially manifested during the

developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The listing can be met by demonstrating "[a] valid, verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Listing 12.05(C). Thus, plaintiff meets the listing if (1) he has a valid IQ score between 60 and 70, (2) the evidence demonstrates or supports onset of the impairment before age 22, and (3) he has a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The Commissioner does not dispute that plaintiff has at least one additional impairment that imposes a significant work-related function. ECF No. 19 at 10-15. Thus, the court need only decide whether plaintiff satisfies the first two requirements of the listing; that is, whether he has a valid IQ score between 60 and 70, and whether the evidence demonstrates or supports onset of the impairments before age 22.

On June 7, 2011, plaintiff was evaluated by psychologist Dr. Janice Nakagawa, Ph.D. AR 329-333. On the Wechsler Adult Intelligence Scale, Fourth Edition test (WAIS-IV), plaintiff obtained a full scale IQ score of 67. The Commissioner urges the court to disregard this score, arguing that results from this IQ test are questionable because of plaintiff's poor work history and good adaptive functioning. ECF No. 19 at 14. This does not appear to be a legitimate reason to simply disregard the evidence. Nor is it clear from the record or otherwise explained how evidence of plaintiff's poor work history undermines the validity of the IQ test. More importantly, the ALJ did not find that plaintiff's poor work history or adaptive functioning rendered the IQ score invalid. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Rather, in discussing Dr. Nakagawa's examination of plaintiff, the ALJ commented that the record shows that plaintiff put forth adequate effort in all testing, and that the results were considered reliable. AR 24. Thus, the ALJ did not question the validity of plaintiff's IQ score.

/////

The Commissioner also argues that it was not error to find that plaintiff did not satisfy Listing 12.05(C) because the record does not support a finding that plaintiff had significant subaverage intelligence before age 22. ECF No. 19 at 10. Again, it is not clear from the ALJ's decision whether he believed that plaintiff's limited intellectual functioning existed prior to age 22. Although the ALJ found that plaintiff had borderline intellectual function and an IQ of 67 (AR 22, 24, 32), the ALJ's decision failed to even reference Listing 12.05(C). Thus, the court cannot discern the basis for the ALJ's finding regarding Listing 12.05(C) and remand for clarification is warranted. *See Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008) (finding that "the ALJ's failure to reference § 12.05 and, in particular, Listing 12.05(C) makes it unclear whether the ALJ came to grips with the specific requirements of that section," and remanding the matter for "clarification regarding the nature of the considerations applied at step 3 and, particularly, precisely what was decided and why.").

Furthermore, a claimant is not required to produce an IQ score ascertained prior to the age of 22 in order to meet the listing. *See Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010). Several circuits have held that an adult IQ score creates a rebuttable presumption that the impairment existed before the age of 22. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001) (IQ tests after age 22 satisfy the listing criteria and "create a rebuttable presumption of a fairly constant IQ throughout life") (citing *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001)*, Luckey v. U.S. Dept. Of Health and Human Services*, 890 F.2d 666, 668 (4th Cir. 1989)). District courts within the Ninth Circuit are split. *Compare, e.g., Forsythe v. Astrue*, 2012 WL 217751, at * 6-7 (E.D. Cal. Jan. 24, 2012) (collecting cases and adopting presumption); *Jackson v. Astrue*, 2008 WL 5210668, at * 6 (C.D. Cal. Dec.11, 2008) ("several circuits have held that valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life . . . . The Court finds the reasoning of the Seventh, Eighth, and Eleventh Circuits to be persuasive"); *Schuler v. Astrue*, 2010 WL 1443882, at *6 (C.D. Cal. Apr. 7, 2010) ("a valid qualifying IQ score obtained by the claimant after age 22 creates a rebuttable presumption that the claimant's mental retardation began prior to the age of 22, as it is presumed that IQ scores remain relatively constant during a person's lifetime"); with *Clark v. Astrue*, 2012 WL 423635 (E.D. Cal. Feb.8, 2012)

6

(declining to adopt rebuttable presumption); *Rhein v. Astrue*, 2010 WL 4877796, at *8 (E.D. Cal. Nov. 23, 2010) (finding rebuttable presumption would remove plaintiff's burden at step three).

This court concurs with the reasoning in *Forsythe* and adheres to the line of cases applying the rebuttable presumption. *See Wooten v. Colvin*, No. 2:12-cv-426 EFB, 2013 WL 5372855, at *3-4 (E.D. Cal. Sep. 25, 2013); *Woods v. Astrue*, No. CIV. S-10-2031-GEB-EFB, 2012 WL 761720, at *4 (E.D. Cal. Mar. 7, 2012). As the ALJ did not even reference Listing 12.05, he clearly failed to rebut the presumption.

Accordingly, the matter must be remanded to allow the ALJ to consider whether plaintiff satisfies listing 12.05(C).

IV.  CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further consideration consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: March 21, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE